IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SARA KIM,<br><br>      Plaintiff,<br><br>  vs.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>      Defendant. | Case No. 23-cv-00321-DKW-RT<br><br>**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff Sara Kim appeals the denials of her applications for disability insurance benefits and supplemental security income, asserting that the Administrative Law Judge's ("ALJ") August 2, 2022 decision was not supported by substantial evidence and was based upon the application of incorrect legal standards. Specifically, Kim contends that: (1) the ALJ improperly rejected Kim's testimony regarding her fibromyalgia without considering the unique standards applied by the Social Security Administration ("SSA") to such claims; (2) the ALJ improperly rejected Kim's testimony that her fibromyalgia affects her energy levels without providing any rationale; and (3) the ALJ improperly rejected her testimony as to the severity of her back pain without sufficient reasoning. Having

---

[1] On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is therefore automatically substituted as Defendant in this case.

carefully reviewed the parties' briefing and the record generally, the Court agrees that the ALJ erred by failing to consider Kim's testimony using the proper standards for fibromyalgia. Accordingly, as more fully explained below, the Court REMANDS this case for further administrative proceedings.

## FACTUAL & PROCEDURAL BACKGROUND

### I. Review of Disability Claims

The Commissioner of Social Security utilizes a five-step process for evaluating whether a person is disabled under the Social Security Act. 20 C.F.R. § 404.1520. First, the claimant must demonstrate that she is not currently engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). If she cannot, then she is not considered disabled, and the analysis ends. *Id.*

Next, at Step Two, the claimant must show that she has a severe physical or mental impairment, or combination of impairments, that significantly limits her ability to perform basic work activities. *Id.* §§ 404.1520(a)(4)(ii), (c). If she cannot prove such impairment, she is not considered disabled and the inquiry ends. *Id.*

At Step Three, the Commissioner must determine whether the claimant's impairment matches or is equivalent to an impairment listed under the governing regulations. *Id.* §§ 404.1520(a)(4)(iii), (d). If it does, the claimant will be found disabled without regard to age, education, or work experience. *Id.* If it does not,

the Commissioner must make a finding regarding the claimant's residual functional capacity ("RFC") to perform work and proceed to Step Four. *Id.* § 404.1520(e).

At Step Four, the Commissioner must consider whether the claimant's impairment, in light of her RFC, prevents her from performing any relevant work in which she previously engaged. *Id.* §§ 404.1520(a)(4)(iv), (e), (f). If the claimant is able to perform her previous work, she is not considered disabled. *Id.* § 404.1520(f). If she is not, the evaluation proceeds to Step Five. *Id.* §§ 404.1520(a)(4)(v), (g).

At Step Five, the burden shifts to the Commissioner to show that: (1) in light of the claimant's RFC, age, education, and work experience, she can perform other work; and (2) such other work is available in significant numbers in the national economy. *Id.* §§ 404.1520(a)(4)(v), (g); 20 C.F.R. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that the Commissioner bears the burden of proof at Step Five). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1).

## II. <u>The ALJ's Decision</u>

On August 2, 2022, the ALJ issued a decision finding Kim "not disabled" for the purposes of both disability insurance benefits and supplemental security income. Administrative Record ("AR") at 24. At Step One of the disability

evaluation process, the ALJ determined that Kim had not engaged in substantial gainful activity since her alleged onset date of June 30, 2015. *Id.* at 16. At Step Two, the ALJ determined that Kim had the following severe impairments: degenerative disc disease, status post surgeries, fibromyalgia, migraine headaches, mood disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder. *Id.* At Step Three, the ALJ determined that these impairments—separately or in combination—did not meet or medically equal the severity of one of the impairments listed in the governing regulations. *Id.* at 16–19. Accordingly, prior to moving on to Step Four, the ALJ determined that Kim had the RFC to perform light work with the following limitations:

> unable to climb ladders, ropes, and scaffolds; otherwise, able to perform only occasional postural activities; unable to work in environments with concentrated exposure to significant vibrations, unprotected heights, or dangerous, moving machinery; able to perform only non-complex routine tasks; unable to perform fast-paced work, such as rapid assembly or conveyor belt work; and unable to adapt to significant changes in a work routine.

*Id.* at 19–20.

At Step Four, the ALJ determined that Kim was unable to perform her past relevant work as a data analyst. *Id.* at 22. Finally, at Step Five, the ALJ determined that, considering Kim's RFC, age, education, and work experience, she could perform jobs existing in significant numbers in the national economy, including: marker, photo copy machine operator, and cafeteria attendant. *Id.* at

22–23.  Accordingly, the ALJ found that Kim was not disabled from June 30, 2015 through the date of the decision.  *Id.* at 23.

On June 7, 2023, the Appeals Council denied Kim's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1.

## STANDARD OF REVIEW

When reviewing an ALJ's disability determination, the Court must uphold the decision "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."  *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  In other words, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation marks and citation omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, "[e]ven though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of

disability." *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002). Accordingly, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968).

## DISCUSSION

In her Opening Brief, Dkt. No. 15, Kim raises three issues related to the ALJ's consideration of her subjective symptom testimony. These include: (1) whether the ALJ improperly rejected her testimony as to her fibromyalgia without considering it under the unique rules applicable to such claims; (2) whether the ALJ improperly rejected Kim's testimony that her lack of energy was related to her fibromyalgia without providing any rationale; and (3) whether the ALJ improperly rejected Kim's testimony with regard to her back pain without specific, clear, and convincing reasons. Dkt. No. 15 at 5–6.

In weighing a claimant's symptom testimony, the Ninth Circuit instructs that where "an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quotation marks and citation omitted). Such findings

"must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id.* (quotation marks and citation omitted). As such, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quotation marks and citation omitted).

Here, Kim first contends that the ALJ improperly discredited her symptom testimony by failing to consider it in light of the specific standards promulgated for the purposes of evaluating fibromyalgia claims.[2] Fibromyalgia often causes intermittent symptoms of chronic pain, tender points, fatigue, stiffness, and sleep disturbance that present without any outward or objective signs. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). As such, the condition is usually diagnosed exclusively based on self-reports of pain and other symptoms. *Id.* at 656–57; *see also Benecke*, 379 F.3d at 590 (explaining "there are no laboratory tests to confirm the diagnosis."). To reflect this, the SSA has informed ALJs that "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of *fibromyalgia's*

---

[2]Remarkably, the Commissioner's Answering Brief fails to even mention the word "fibromyalgia," let alone address this argument. *See generally* Dkt. No. 17.

*unique symptoms and diagnostic methods.*" *Revels*, 874 F.3d at 662 (emphasis added).  Specifically, when a claimant, as here, indicates they suffer from multiple conditions, the ALJ should determine and indicate which symptoms are attributable to fibromyalgia and which are not.  *Sayers v. Saul*, 797 F. App'x 384, 385 (9th Cir. 2020).  "To the extent the patient's symptoms are caused by fibromyalgia, the ALJ must assess the patient's self-reporting of those symptoms in light of the fibromyalgia diagnosis." *Id*.  Further, in doing so, the ALJ should "consider a longitudinal record whenever possible" and take care not to improperly discount a claimant's subjective symptom testimony by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Revels*, 874 F.3d at 657; *Benecke*, 379 F.3d at 594 (quotation marks and citation omitted).

    Here, there is no indication that the ALJ took into account the unique attributes of fibromyalgia in evaluating Kim's testimony.  At the SSA hearing, Kim testified regarding her pain with sitting and standing, her need to spend most of the day lying down, her energy levels, and her migraine headaches, all of which may be symptoms of, or associated with, fibromyalgia.  *See* AR at 40–53; Social Security Ruling ("SSR") 12-2p.  Nevertheless, despite finding that Kim's fibromyalgia constituted a severe impairment, the ALJ failed to indicate which of Kim's symptoms were attributable to the same.  *See* AR at 20–21.  In failing to do

so, the ALJ did not apply the requisite analysis required by the Ninth Circuit, resulting in several errors.

Specifically, the ALJ first erred by discounting Kim's subjective symptom testimony as inconsistent with the objective medical evidence. The ALJ found that Kim's testimony lacked credibility as her statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record." AR at 20. Rather:

> notwithstanding her history of back pain *and fibromyalgia*, updated treatment records show little objective evidence of impairment. Notably, treatment records repeatedly indicate that she has retained a normal gait. . . . Further, August 2019 treatment records specifically indicate that she presented with a normal gait, normal muscle mass and tone, adequate motor strength, an essentially normal range of motion, and negative straight-leg raising test results. . . . And June 2020 treatment records also specifically indicate that she retains good use of her upper and lower extremities.

*Id.* at 21 (emphasis added). However, this fixation on the lack of objective medical evidence, while perhaps appropriate in certain contexts, was improper in light of the principle that an ALJ may not discredit a claimant's subjective fibromyalgia symptom testimony on the basis of normal examination results. *See Revels*, 874 F.3d at 666 (explaining that normal medical findings are "perfectly consistent with debilitating fibromyalgia"); *Benecke*, 379 F.3d at 594 (noting "sheer disbelief [of symptom testimony] is no substitute for substantial evidence"). As such, the ALJ lacked specific, clear, and convincing reasons to reject Kim's testimony on this basis.

Second, the ALJ also failed to provide specific, clear, and convincing reasons for rejecting Kim's testimony based on her allegedly "conservative" fibromyalgia treatment, especially when he did not explain his reasons for evaluating her regimen as such. Generally, an ALJ may consider the conservative nature of a claimant's treatment in discounting her subjective symptom testimony. *See Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007)). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels*, 874 F.3d at 667; *see also Cindy F.*, 367 F. Supp. 3d at 1210 (explaining that where a "claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms.").

Here, in rejecting Kim's testimony, the ALJ stated simply that "the record documents only conservative medical treatment." AR at 21. At no point, however, did the ALJ identify the treatments Kim received, explain why they would be considered conservative, or note what additional treatment would be appropriate or available to treat her fibromyalgia. This failure is particularly acute in the context of fibromyalgia which has an unknown cause, no cure, and "is poorly-understood within much of the medical community." *Benecke*, 379 F.3d at 590. As such, the ALJ improperly discredited Kim's subjective fibromyalgia symptom testimony

without specific, clear, or convincing reasons to do so. *See Revels*, 874 F.3d at 667 (finding reversible error where the ALJ discredited a claimant's fibromyalgia symptom testimony based on her purportedly conservative treatment regimen without further explanation); *see also Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Third, the ALJ also erred by discrediting Kim's symptom testimony based on her short-term improvements in response to medication, without consideration of the longitudinal record and the intermittent nature of fibromyalgia symptoms. Specifically, in rejecting Kim's testimony, the ALJ noted that her treatment records indicate "improvement in her . . . fibromyalgia with adequate medication. . . . Further, while treatment records document intermittent complaints of significant pain, October 2019, April 2020, and May 2021 treatment records specifically indicate a pain score of '0'." AR at 21. That dismissive explanation, however, does not account for the nature of fibromyalgia symptoms, which are often intermittent. *See Revels*, 874 F.3d at 663 (citing SSR 12-2p, at *6). Indeed, Kim's medical records indicate that she also experienced pain levels ranging between "5" and "7" during this same time period. *See* AR at 545, 566, 578, 593, 1130, 1134, & 1142. Accordingly, the ALJ's reliance on cherry-picked medical reports to reject Kim's testimony without considering the longitudinal record more broadly

fails to comply with the guidance promulgated by both the SSA and the Ninth Circuit.

Finally, the ALJ also erred by discrediting Kim's symptom testimony as inconsistent with her reported daily activities. Specifically, the ALJ found Kim's testimony to be inconsistent as:

> December 2015 treatment records relate her admission that she retains a moderate activity level, including regular swimming. . . . September 2016 treatment records show her allegation that she regularly walks, swims, and hikes. . . . And November 2016 treatment records also indicate that she swims.
>
> . . .
>
> In his November 2020 statement, moreover, the claimant's friend observes that her activities include driving, shopping, and doing laundry.

AR at 21. Such analysis, however, fails to take into account Kim's limitations in performing such activities, including her need to spend the majority of her time lying down and to take breaks or alternate days performing tasks. *See* AR at 41, 49–50. As such, the ALJ did not provide specific, clear, and convincing reasons for rejecting this testimony. *See Revels*, 874 F.3d at 667–68 (finding reversible error where the ALJ improperly discredited the claimant's descriptions of the significant limits her fibromyalgia placed on her ability to engage in daily activities).

## CONCLUSION

The ALJ erred by failing to differentiate Kim's fibromyalgia-related symptoms from the symptoms associated with her other severe impairments recognized by the ALJ, and by failing to evaluate Kim's fibromyalgia symptom testimony in light of the unique standards applicable to such claims.[3]  Accordingly, the Commissioner's decision denying Kim's applications for disability insurance benefits and supplemental security income is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

The Clerk of Court is instructed to CLOSE this case.

IT IS SO ORDERED.

DATED: February 5, 2024 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Sara Kim v. Martin O'Malley*; Civil No. 23-00321 DKW-RT; **ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

---

[3]Because the Court finds reversible error for the cited reasons, it need not (and does not) address Kim's other arguments for remand relating to her lack of energy and her back pain.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding to the ALJ and therefore declining to reach an alternative ground for remand).